Freeman, J.,
delivered the opinion of the court.
The main question presented in this case is, whether Keeble, as surety for prosecution of appeal from an inferior court to this court, on a judgment rendered for a debt due Jones, is discharged from his liability. A brief summary of the facts will serve to' present the question. Jones obtained a judgment on notes for property sold by him as commissioner, in which two of the Kalstons were defendants.
This was in 1860. An appeal was prosecuted to this court, Keeble becoming surety for the two Kalstons on their appeal bond. The judgment was affirmed in December, 1861. Execution was issued in February, 1861, to *542 the sheriff of Rutherford county,' against Ralstons and Keeble.
It is conceded in argument that Jones urged the sheriff to do his duty, and make his money. It Is also conceded that Keeble told him to do so likewise, but that he wantonly and of his own wrong, persistently failed to execute the process, and the money was not made. After the war, perhaps, the execution was delivered to clerk of this court, indorsed not satisfied.
The war coming on, business ceased to be done in this court, and thus the matter rested.
After the war an execution was issued, ultimately a pluries, which is now sought to be perpetually enjoined on the ground that under the facts of the case the surety was released.
The main fact on which a relase is sought, in addition to the above statement is, that an assumed lien of the judgment given by our statute for twelve months after judgment had been lost by failure of sheriff to do his duty, on lands conveyed by Ralston to third parties, but which would have been overreached by the lien, so that the lands were subject to the execution. In addition, an argument is made based on the assumption that Jones, the plaintiff in the execution, had a remedy by law against the sheriff, but that Keeble had no such remedy as is given by our statute to Jones, to wit: A summary motion for non-return, or insufficient return.
"With this statement we proceed to give our conviction without elaborating by argument, the questions made before us.
It is settled by our own, as well as the general current of authority, that mere delay on part of creditor will not discharge a surety, more especially is this so after judgment. And even delay in pursuance of an agreement to that effect, unless it be a binding contract, tying up the hand of the creditor — that is, one supported by a valuable consideration, *543 and not void as being in violation of law — will not have that effect. 2 Am. L. Cases, ed. 1871, 466, 470, cases cited; Watson v. Reed et al., MS., Nashville, 1875. [Since reported in 4 Bax., 49.]
It is equally sound law that the creditor cannot relinquish any right or security which would conduce to the safety, or inure to the benefit of the surety. And that a surety is entitled to the benefit of all securities taken by the creditor for the safety of his debt, whether the surety knew of them when taken or not. This he is entitled to on payment of the debt. It. is also held in the manuscript case cited [4 Bax., 49], that, a release or failure to enforce a valid levy on land by the creditor, by which the land was prevented from being appropriated to payment of the debt, and appropriated by other creditors of the principal, will release the surety, to the extent of the value of the land.
This may be all conceded as settled, but we have been pointed to no ease which holds, or which even tends, as we think, fairly to the conclusion, that where the creditor himself is guilty of no wrong towards the surety, releases no lien, is not guilty of any gross neglect by which one is lost when it had been attained or existed; on the contrary is active in endeavoring to enforce his rights, but is prevented by neglect of duty on the part of an officer whose business it is to execute process in his hands, from realizing his money out of the principal, that in such cases the surety is released. It is true the creditor has a remedy given bim by law against the defaulting officer, but he is not bound to resort to this, and give up his debt against the surety. This would be to relieve the surety from the obligation of his contract, and substitute a new debtor in his place by the wrongful and tortious act of a third party, an act which was not participated in or approved by the creditor, on the contrary, done aginst his will, in other words, to make bim particeps criminis in the wrong of the sheriff to the relief of the surety from his contract, contrary to the fact, and *544 against Ms desire or intention. The creditor is responsible for his conduct affecting the interests of the surety in many cases, but this cannot justify us in holding him responsible for what he neither does or approves, or aids or assists in, when done by another.
Without further* discussion, we hold the surety was not released by reason of anything in this record, and reverse the decree of the chancellor.
A decree will be drawn here in accordance with tMs opinion. Costs paid by complainant Keeble both in this court and court below.